**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BELA BORCSOK,

                                          Plaintiff,

              - v -                                          Civ. No. 9:03-CV-395
                                                                    (GLS/RFT)

PETE D. EARLY; JAMES PLESCIA, Deputy Superintendent
of Administration; DONALD SELSKY, Director of Inmate
Disciplinary Programs; DAVID MILLER, Superintendent; and
GLENN S. GOORD, Commissioner, Department of Correctional
Services,

                                          Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

BELA BORCSOK
Plaintiff, *Pro Se*
82-A-3861
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051-0999

HON. ANDREW M. CUOMO                       DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

         *Pro se* Plaintiff Bela Borcsok brings a civil action pursuant to 42 U.S.C. § 1983, alleging

violations of his due process rights pursuant to the Fourteenth Amendment regarding a prison

disciplinary hearing.  Dkt. No. 1, Compl. at § IV.  Defendants bring a Motion for Summary

Judgment.  Dkt. No. 23.   Plaintiff opposes the Motion. Dkt. Nos. 24-26.  For the reasons to follow,

it is recommended that the Defendants' Motion for Summary Judgment be **granted**.

## I. PROCEDURAL HISTORY

A brief procedural history is necessary in this case.  On March 31, 2003, Plaintiff filed his Complaint.  Dkt. No. 1, Compl.  Instead of submitting an answer, Defendants Goord and Selsky filed a Motion to Dismiss on July 3, 2003.  Dkt. No. 10, Mot. to Dismiss.  At the time the Motion to Dismiss was filed, Defendants Early, Plescia, and Miller had not been served nor appeared in the action.  Dkt. No. 12.  Defendants Early, Plescia, and Miller were subsequently served and appeared in the action.  Dkt. Nos. 9 & 14-17.

Thereafter, on March 5, 2004, this Court ruled that the Motion to Dismiss would be converted into a Rule 56 Motion for Summary Judgment since Defendants Goord and Selsky submitted matters that were outside the pleadings.  Dkt. No. 20, Order, dated Mar. 5, 2004.  The Court noted that although Defendants Early, Plescia, and Miller appeared in the action, they did not join in the Motion to Dismiss.  *Id.* at p. 2, n.1.  In order to make this conversion, the Court provided Plaintiff and Defendants an opportunity to submit additional materials.  *Id.* at p. 4.  The Court further stated that once the new Motion for Summary Judgment was filed, we would deem the papers filed in support and opposition to the Motion to Dismiss incorporated into the new Motion for Summary Judgment.  *Id.*  We also "preserve[d] Defendants' rights to bring such Motion on behalf of all the Defendants" who appeared in this action.  *Id.* at p. 4, n.5.  Accordingly, all Defendants now bring the current Motion for Summary Judgment.  Dkt. No. 23, Mot. for S.J. & Notice of Mot.

## II.  FACTS[1]

During the time the events occurred relevant to this action, Plaintiff was incarcerated at the Eastern Correctional Facility.  Dkt. No. 23, Defs.' 7.1 Statement at ¶ 1; Dkt. No. 25, Pl.'s 7.1 Statement at ¶ 1.  Defendants Corrections Lieutenant Early, Deputy Superintendent of Administration Plescia, and Superintendent Miller, are employed at Eastern, while Selsky is the Director of the Department of Correctional Services ("DOCS") Inmate Disciplinary Program and Goord is the Commissioner of DOCS.  Defs.' 7.1 Statement at ¶¶ 2-6; Pl.'s 7.1 Statement at ¶¶ 2-7.

On March 26, 2001, Early issued a Misbehavior Report to Plaintiff, charging him with violations of Rules 109.10, 113.23, 116.10, 116.11, 113.15, and 114.10.[2]  Defs.' 7.1 Statement at ¶¶ 7 & 8; Dkt. No. 11, Douglas J. Goglia Decl., dated June 19, 2003, Ex. 3(A), Misbehavior Report, dated Mar. 26, 2001; Pl.'s 7.1 Statement at ¶ 8.  The Report stated the following as the description of the incident:

> [a]s a result of the ongoing investigation as well as an interview [Early] conducted with Inmate Borcsok, B.[,] 82-A-3861[,] on the above date and approximate time, [Early has] concluded the following: Inmate Borcsok has, over the last several months, used a CD-Burner that was located in the Braille Area to make copies of computer software and

---

[1]  Plaintiff failed to comply with Northern District of New York Local Rule 7.1(a)(3).  Plaintiff submits a Statement of Facts, however, Plaintiff did not mirror the movant's Statement of Material Facts by either admitting or denying each of the movant's assertions in matching numbered paragraphs.  Dkt. No. 25.  Plaintiff, after paragraph four, seems to misnumber the paragraphs and then fails to properly admit or deny statements made by Defendants.  *Id.*  As such, any facts not specifically controverted by Plaintiff may be deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).  Nevertheless, this Court will utilize Plaintiff's Verified Complaint with accompanying Exhibits and Statement of Facts as well as Defendants' Statement of Material Facts with accompanying Exhibits to adduce the uncontested, material facts of the case.

[2]  The following constitutes the substance of each Rule: 1) 109.10- inmates shall not be out of place in any area of the facility; 2) 113.23- inmates shall not be in possession of any contraband items not authorized by the Superintendent, DOCS, or facility rules; 3) 116.10- inmates shall not lose, destroy, steal, misuse, damage or waste any type of state property; 4) 116.11- inmates shall not alter, tamper with or attempt to repair any type of state or personal property without authorization; 5) 113.15- inmates shall not purchase, sell, loan, give, or exchange personally owned articles without authorization; and 6) 114.10- inmates shall not attempt to smuggle or attempt to smuggle or solicit others to smuggle any item in or out of the facility or from one area to another.  Dkt. No. 23, Defs.' 7.1 Statement at ¶ 8, n. 2-7; *see also* N.Y. COMP. CODES R. & REGS. tit. 7, §§ 270.2(B)(10)(i), (14)(v), (14)(xiii), (15)(i), (17)(i), & (17)(ii).

> personally owned games. . . . He also admitted adding a CD-ROM drive to his computer
> in the Fire & Safety Area in Maintenance. . . . He further admitted giving the games and
> disks to Inmate Gardella, M. 75-B-0978. . . . Note: Braille is not Inmate Borcsok's
> assigned program. . . .

Defs.' 7.1 Statement at ¶ 9; Goglia Decl., Ex. 3(A), Misbehavior Report; Pl.'s 7.1 Statement at ¶ 8.

Plaintiff alleges that Early fabricated the Report and that subsequently, his due process rights were violated at his Tier III Disciplinary Hearing ("Hearing"). Defs.' 7.1 Statement at ¶¶ 10 & 11; Goglia Decl., Exs. 3(D), Hr'g Tr., dated Apr. 6, 2001, & 3(E), Hr'g Record, dated Apr. 8, 2001. The Hearing was conducted by Plescia, the Hearing Officer ("H.O."), over several days. Defs.' 7.1 Statement at ¶ 11; Goglia Decl., Ex. 3(D), Hr'g Tr. The Hearing commenced on March 30, 2001 and Plaintiff pled not guilty to all the Rule violations. Goglia Decl., Ex. 3(D), Hr'g Tr. at pp. 1-3.

Plescia asked Plaintiff about his defenses and Plaintiff stated he did not admit to having a CD/ROM in the machine yet he claimed he got rid of it two months prior to the Report because it was "getting hot[.]" *Id.* at p. 4. Plaintiff stated the CD/ROM was in the machine when he received it, therefore, Plaintiff did not add it himself. *Id.* Plaintiff did admit to removing it after he was told to do so by Officer Cooper. *Id.* at pp. 4-5. The Hearing was then adjourned until April 2, 2001, when a witness, John Cosh, became available. *Id.* at p. 5. Cosh stated that Plaintiff visited the Braille area once or twice to ask technical questions but was not allowed to use the equipment to burn CDs. *Id.* at pp. 7-8. The witness also confirmed that a CD burner was installed in the computer for a period of time. *Id.* at pp. 11-12. Cosh further noted that to his knowledge he did not believe Plaintiff burned any CDs. *Id.* at pp. 12-13.

After the witness concluded, the Hearing was adjourned again until April 5, 2001. *Id.* at p. 13. On April 5th, Officer Cooper, the Fire and Safety Officer, testified that Plaintiff would on occasion assist him with the use of the computer. *Id.* at p. 14. He also stated that he did not believe

that the computer Plaintiff worked on had a CD/ROM drive but Cooper noted that he and Plaintiff discussed the issue of CD/ROMs and software and that generally, if there was one on a computer, Cooper wanted to "get them out of there." *Id.* at p. 15. Cooper then proceeded to clarify his testimony and stated that he did not tell Plaintiff to remove a CD/ROM device, but only software such as games and programs that did not belong on the computers. *Id.* at p. 16. After Cooper finished testifying, Early was the next witness. *Id.* at p. 18.

Early stated that the Report was eventually written because of an investigation, which was initiated based upon a confidential note that there was a computer with a CD/ROM drive in the "basement of FRP." *Id.* at p. 19. A search of the area produced two computers, one of which contained a CD/ROM with computer games and CDs that were burned. *Id.* After the search, Early interviewed Plaintiff regarding the use of a CD burner in the Braille area to make copies of software and games. *Id.* Early purported that Plaintiff admitted in the interview that he used a CD burner, gave some games to "Gardella[,]" and put a CD/ROM drive behind a false panel so that it would not attract attention *Id.* at pp. 19-21.

Plescia then addressed the Rule violations with Early to determine how they occurred. *Id.* at pp. 22-26. As to being out of area, Rule 109.10, Early stated it was okay for Plaintiff to be in the Braille area for his job but not for purposes involving the CD burner. *Id.* at pp. 21-22; *see supra* note 2. As to 113.23, possession of contraband, Early stated that Plaintiff was not found in possession of the CD/ROM or other such items, but he was charged with this infraction because he admitted to possessing it in the past. Goglia Decl., Ex. 3(D), Hr'g Tr. at pp. 22-24; *see supra* note 2. As to Rules 116.10 and 116.11 regarding state property, Early stated he again relied on the admissions made by Plaintiff and did not conduct any further investigations. Goglia Decl., Ex.

3(D), Hr'g Tr. at p. 23; *see supra* note 2.  Early also testified that he could not specifically remember when the CD burner and/or CD/ROM were put into the Braille area and then taken out, only that it had happened within the past few months.  Goglia Decl., Ex. 3(D), Hr'g Tr. at p. 24.  In regards to Rule 113.15, exchange of personal articles, Plescia and Early both stated that when Plaintiff admitted giving something to Gardella, the charge was applicable.  *Id.* at p. 25; *see supra* note 2.  Plaintiff then asserted that he could not have done any of the things he supposedly admitted he had done.  Goglia Decl., Ex. 3(D), Hr'g Tr. at pp. 25-26.   Subsequently, Plaintiff told Plescia he would like to ask more questions but that his legal papers were not with him and therefore, Plescia adjourned the Hearing for one more day.[3]  *Id.* at pp. 26-29.

On April 6, 2001, the Hearing was reconvened  *Id.* at p. 29.  Instead of asking more questions, Plaintiff summed up his thoughts by explaining that he did not believe there was sufficient evidence to justify any of the charges brought against him.  *Id.* at pp. 30-31.  Plaintiff reiterated that there was no physical evidence presented, the whole Report was based upon admissions, and there was no investigation conducted after he was interviewed.  *Id.* at p. 31.  Plaintiff reaffirmed that he did not make any admissions.  *Id.*  Shortly after concluding the Hearing, Plescia made his findings.  *Id.* at p. 32.  Plescia found Plaintiff guilty of all charges and sentenced him to confinement in the Special Housing Unit ("SHU") for ninety (90) days along with corresponding loss of packages, commissary, and phone privileges.  *Id.* at pp. 32-35; Pl.'s 7.1 Statement at ¶ 13.

Plaintiff claims that during the Hearing:

---

[3] It does not seem as though the violation of Rule 114.10 was specifically discussed.  *See generally* Goglia Decl., Ex. 3(D), Hr'g Tr.

1. [i]t was never proven that plaintiff made any admissions[;] 2. [i]t was never proven that Plaintiff ever committed any of the alleged charges/violations[;] 3. [t]here are no witnesses, recordings, nor any signed statements to substantiate the supposed admissions or the alleged charges[;] 4. [] Lt. [Early] admitted he never investigated the matter[;] 5. [t]here are no dates, times, or areas listed as to when and where the alleged Physical Evidence was discovered[;] 6. [t]here was <u>no</u> Physical Evidence produced at the hearing[;] 7. [t]he Hearing Officer and the Lt. admitted they did not have evidence for the hearing[;] 8. [t]here was no proof of any Confidential Information[;] 9. [i]t was never proven that the computer in the Fire & Safety Area was in fact used for non-business purposes[;] 10. [n]o times or dates are specified as to when any of the stated charges/violations supposedly occurred, yet the Hearing Officer himself stated that this occurred at "the appointed time in the past[;]" 11. [t]he Plaintiff was admittedly never found to be in Possession of any contraband[;] 12. [t]he testimony of both Mr. Cosh and Officer Cooper contradicted the Misbehavior Report as well as the Lt.'s testimony[; and] 13. [t]he finding of guilt was based on supposed admissions as well as non-existent Physical Evidence.

Defs.' 7.1 Statement at ¶ 12;[4] Compl. at § IV.

Plaintiff's other assertions regarding his Hearing are that the Report was based upon double hearsay and Early and Plescia relied on physical evidence that did not exist and was not introduced at the Hearing. Defs.' 7.1 Statement at ¶¶ 12 & 13;[5] Compl. at § IV; Pl.'s 7.1 Statement at ¶¶ 8-10 & 12.

After the Hearing, Plaintiff appealed the decision to Commissioner Goord on April 10, 2001, detailing the procedural and evidentiary flaws. Defs.' 7.1 Statement; Goglia Decl., Ex. 3(G), Appeal, dated Apr. 10, 2001; Pl.'s 7.1 Statement at ¶ 14. On April 23, 2001, Plaintiff sent an additional appeal form to Goord regarding the sentence imposed at the Hearing. Defs.' 7.1 Statement; Goglia Decl., Ex. 3(G), Appeal, dated Apr. 23, 2001; Pl.'s 7.1 Statement at ¶ 14. Selsky responded on behalf of Goord and affirmed the Hearing determination on May 24, 2001. Defs.' 7.1 Statement; Goglia Decl., Ex. 3(G), Selsky Mem.; Pl.'s 7.1 Statement at ¶ 15.

---

[4] Defendants inadvertently have two paragraphs numbered 12. The Court refers to the first paragraph numbered 12 for this statement. *See* Defs.' 7.1 Statement.

[5] The Court references the second paragraph numbered 12.

All in all, Plaintiff claims that Early offered conclusory testimony and therefore, displayed indifference in the matter, Plescia was biased and prejudiced in conducting and evaluating the Hearing, Miller, as Superintendent, "is responsible for all that happens within his prison[,]" Selsky affirmed the disposition of the Hearing, and Goord "oversees all that goes on within his system." Defs.' 7.1 Statement at ¶¶ 14-20; Compl. at § IV.

On September 10, 2001, Plaintiff commenced an Article 78 proceeding in the New York State Court, Albany County, challenging his Tier III Hearing.[6]  Defs.' 7.1 Statement at ¶ 21; Goglia Decl., Ex. 1, Article 78 Pet., dated Sept. 10, 2001; Pl.'s 7.1 Statement at ¶ 16.  Plaintiff contended there was a lack of substantial evidence, the testimony of Cosh and Cooper did not support Early's testimony, and Plescia exceeded his authority by disregarding the testimony of the two witnesses. Defs.' 7.1 Statement at ¶¶ 22-23; Goglia Decl., Ex. 1, Article 78 Pet.  However, because there was a challenge of whether "substantial evidence" supported the determination, the proceeding was transferred to the New York State Appellate Division, Third Department.  Defs.' 7.1 Statement at ¶ 26; Goglia Decl., Exs. 2(E), Mem. and J., dated July 11, 2002, at p. 1, & 5, *Borcsok v. Selsky*, 744 N.Y.S.2d 772 (N.Y. App. Div., 3d Dep't 2002); Pl.'s 7.1 Statement at ¶ 18.

The parties briefed the issues to the Appellate Division and the court rendered its decision on July 11, 2002.  Defs.' 7.1 Statement at ¶¶ 22-27; Goglia Decl., Exs. 2(A), Pl.'s Br., 2(B), Resp.'s Br., 2(C), Pl.'s Reply Br.; Pl.'s 7.1 Statement at ¶¶ 19-20.  The Appellate Division stated that the Report along with Early's testimony "constituted substantial evidence supporting the administrative determination of guilt[.]"  Defs.' 7.1 Statement at ¶ 27; Goglia Decl., Ex. 5, *Borcsok v. Selsky*, 744

---

[6] Defendants state the Petition was filed on September 25, 2001, instead of September 10, 2001, the date of the signature.  Defs.' 7.1 Statement at ¶ 21.  However, the Court is unaware of how Defendants arrived at this date since the Petition shows no other date.

N.Y.S.2d at 772; Pl.'s 7.1 Statement at ¶ 21.  The Court further stated that

> [t]he author of the report testified that petitioner admitted during an interview that he
> had used the CD burner to make copies of software and games, that he had given certain
> games to another inmate and had added a CD-ROM drive to his computer which he
> attempted to hide with masking tape.  Petitioner's claim that he did not make the
> admissions attributed to him created a credibility issue for the Hearing Officer to resolve
> . . . .  Moreover, by not raising it at the hearing, petitioner has not preserved his
> objection to the sufficiency of the misbehavior report . . . .  Were we to consider it, we
> would not find the omission of specific dates and times fatal, since the misconduct took
> place over several months and was the subject of a lengthy investigation[.]

Defs.' 7.1 Statement at ¶ 27; Goglia Decl., Ex. 5, *Borcsok v. Selsky*, 744 N.Y.S.2d at 773; Pl.'s 7.1
Statement at ¶ 21.

Accordingly, the Appellate Division denied the Petition.  Defs.' 7.1 Statement at ¶ 27; Goglia Decl.,

Ex. 5, *Borcsok v. Selsky*, 744 N.Y.S.2d at 773; Pl.'s 7.1 Statement at ¶ 21.  Plaintiff appealed the

decision to the New York State Court of Appeals where leave to appeal was denied.  Defs.' 7.1

Statement; Goglia Decl., Ex. 6, *Borcsok v. Selsky*, 781 N.E.2d 914 (N.Y. Ct. of App. 2002); Pl.'s

7.1 Statement at ¶ 22.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of

law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine

issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis

of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

accordance with local court rules, served a concise statement of the material facts as to which it

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

*-10-*

**B.  Due Process Claims**

Plaintiff claims that his Fourteenth Amendment due process rights were violated as there was a lack of sufficient evidence presented at the Hearing to support the contents of the Misbehavior Report, the Report was fabricated, and that Plescia was biased.  Dkt. No. 24, Pl.'s Mem. of Law at pp. 5-9; Compl. at § IV.  Defendants claim there was "some evidence" to find Plaintiff guilty of the charges as required by law.  Dkt. No. 12, Defs.' Mem. of Law at pp. 8-13.  Defendants also assert that collateral estoppel should apply to the finding of "some evidence" by the Appellate Division, that no evidence was provided to show Plescia was biased, and Plaintiff failed to exhaust his administrative remedies.  *Id.*

As to Plaintiff's claim that the Report was fabricated, the Second Circuit has held that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see Batista v. Goord*, 2005 WL 2179420, at *11 n.75 (N.D.N.Y. Aug. 28, 2005); *Pittman v. Forte*, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002). Furthermore, if a prisoner is afforded the opportunity to have a hearing, "the filing of unfounded charges does not give rise to a *per se* constitutional violation actionable under § 1983."  *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman v. Rideout*, 808 F.2d at 953).  In addition, "[t]here must be more such as retaliation against the prisoner for exercising a constitutional right." *Pittman v. Forte*, 2002 WL 31309183, at *5 (citing *Franco v. Kelly*, 854 F.2d at 588-590); *see also Boddie v. Schnieder,* 105 F.3d at 862; *Batista v. Goord*, 2005 WL 2179420, at *11 n.75.

Here, Plaintiff alleges that no investigation was conducted and the Report was based solely on admissions supposedly made by him.  Notwithstanding, Plaintiff has no constitutional right to be

free from false accusations in a misbehavior report and moreover, Plaintiff was afforded an

opportunity to have a hearing based upon the report and thus there is no *per se* constitutional

violation actionable under § 1983 unless Plaintiff alleged that something else resulted from his

exercise of a constitutional violation, such as retaliation.  In this case, Plaintiff makes no such claim.

*See generally* Compl. at § IV.

　　　　Plaintiff also asserts that there was insufficient evidence presented at the Hearing to support

the Report.  The Fourteenth Amendment to the Constitution states that "no State shall . . . deprive

any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of

confinement that "exceed[] the sentence in . . . an unexpected manner[.]"  *Sandin v. Conner*, 515

U.S. 472, 484 (1995).  "To present a due process claim, a plaintiff must establish (1) that he

possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of

insufficient process."  *Giano v. Selsky*, 37 F. Supp. 2d 162, 167 (N.D.N.Y.), *vacated and remanded

on other grounds by* 238 F.3d 223 (2d Cir. 2001) (citing *Bedoya v. Coughlin*, 91 F.3d 349, 351-52

(2d Cir. 1996)).  In *Sandin*, the Supreme Court ruled that the Constitution did not require that

restrictive confinement within a prison be preceded by procedural due process protections unless the

confinement subjected the prisoner to "atypical and significant hardship . . . in relation to the

ordinary incidents of prisoner life."  515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d at 225

(citing *Sandin v. Conner*, 515 U.S. at 484); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Thus, a prisoner asserting that he was denied due process in connection with segregated

confinement or a loss of privileges must make a threshold showing that the deprivation of which he

complains imposed such an "atypical and significant hardship."  *See Sandin v. Conner*, 515 U.S. at

484.

Factors relevant to an analysis of what constitutes an atypical and significant hardship

include:  "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to

which the conditions of segregation differ from other routine prison conditions, and (3) the duration

of the disciplinary segregation compared to discretionary confinement."  *Spaight v. Cinchon*, 1998

WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.

1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what

constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their

duration must be considered, since especially harsh conditions endured for a brief interval and

somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation

omitted)).  Though the length of the confinement is one guiding factor in a *Sandin* analysis, the

Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of

sanction" that meets the *Sandin* standard.  *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)

(citations omitted).  However, "[w]here the plaintiff was confined for an intermediate duration--

between 101 and 305 days–'development of a detailed record' of the conditions of the confinement

relative to ordinary prison conditions is required."  *Palmer v. Richards*, 364 F.3d at 64-65 (quoting

*Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-

98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the

restrictions imposed relatively minor, such confinement may not implicate a constitutionally

protected liberty interest.");  *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative

sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . .

factual findings before the district court could properly term the confinement atypical or

*-13-*

insignificant").  Accordingly, the court must "make a fact-intensive inquiry" that would examine the

actual conditions of confinement within SHU.  *Palmer v. Richards*, 364 F.3d at 65 (citations

omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d

46, 49 (2d Cir. 1997).[7]  If the conditions of confinement are undisputed, a court may decide the

*Sandin* issue as a matter of law.  *Palmer v. Richards*, 364 F.3d at 65.  If, however, normal conditions

of SHU exist, but the period of confinement is longer than the intermediate duration, then it would

constitute a significant departure from ordinary prison life requiring the protection of procedural due

process under *Sandin*.  *Id.*

Here, Plaintiff must make the threshold showing of an atypical and significant hardship since

a claim of denial of due process was asserted.  Borcsok received 90 days in SHU along with 90 days

loss of packages, commissary, and phone privileges.  Goglia Decl., Ex 3(D), Hr'g Tr. at pp. 32-35.

The amount of time in SHU falls below the intermediate duration.  Furthermore, Plaintiff does not

provide any information that his loss of privileges were in some way atypical of conditions of

confinement that normally occur when a penalty is assessed for such Rule violations.  *See* Compl. at

§ IV; Pl.'s Mem. of Law.  Therefore, the Court assumes that the conditions of confinement were no

more restrictive than necessary pursuant to Department of Correctional Services policies.  *See supra*

note 7.  Since there is no dispute as to the conditions and because the period of confinement fell

below the intermediate range, Plaintiff has failed to show there was an atypical and significant

hardship as to afford the protection provided by procedural due process.

Nevertheless, had Plaintiff asserted that a liberty interest was implicated, we note that the

---

[7] Department of Correctional Services policies provide the conditions of confinement prisoners are subject to when confined in SHU.  *See* N.Y. COMP. CODES R. & REGS. tit. 7, §§ 304.1-.14 & 305.1-.6.

Supreme Court and Second Circuit have addressed the issue of "some evidence."  The Supreme

Court has stated that in identifying safeguards of due process, it has acknowledged the genuine need

of prisons to ensure the safety of inmates, thus "avoiding burdensome administrative requirements

that might be susceptible to manipulation, and [to] preserv[e] the disciplinary process as a means of

rehabilitation."  *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454-55 (1985)

(citations omitted).  In terms of judicial review regarding the written findings of the disciplinary

proceeding as required by due process, the Supreme Court has held that:

> requirements of due process are satisfied if some evidence supports the decision by the
> prison disciplinary board to revoke good time credits.  This standard is met if "there was
> some evidence from which the conclusion of the administrative tribunal could be
> deduced . . . ."  *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S.
> 103, 106 (1927).  Ascertaining whether this standard is satisfied does not require
> examination of the entire record, independent assessment of the credibility of witnesses,
> or weighing of the evidence.  Instead, the relevant question is whether there is any
> evidence in the record that could support the conclusion reached by the disciplinary
> board.  *See ibid.; United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-134 (1924); *Willis
> v. Ciccone*, 506 F.2d 1011, 1018 (CA8 1974).  We decline to adopt a more stringent
> evidentiary standard as a constitutional requirement.  Prison disciplinary proceedings
> take place in a highly charged atmosphere, and prison administrators must often act
> swiftly on the basis of evidence that might be insufficient in less exigent circumstances.
> *See Wolff*, 418 U.S., at 562-563, 567-569.

*Id.* at 455-56.

The Second Circuit has interpreted "some evidence" to mean that there must be some

"reliable evidence."  *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).  Examples of cases when

"some evidence" was not found in a disciplinary proceeding include a corrections officer making a

statement that "every inmate" in a mess hall participated in a riot and an inmate was found guilty

based on that statement, and an inmate being found guilty based on information provided by a

confidential informant though there was no independent examination of the informant's credibility.

*Id.* (citing *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) & *Taylor v. Rodriguez*, 238 F.3d

188, 194 (2d Cir. 2001)).

Plaintiff purports that there was insufficient evidence at his Hearing to find him guilty of the Rule violations. Defendants state that collateral estoppel bars relitigation of this particular issue as it was decided by the New York State Appellate Division, Third Department pursuant to an Article 78 proceeding.

An inmate may be barred by the doctrine of collateral estoppel "from relitigating issues that were determined in [the Article 78] proceeding." *Robinson v. Scully*, 1993 WL 340998, at *4 (S.D.N.Y. Aug. 23, 1993). Pursuant to "the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged." *Giakoumelos v. Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)). This rule applies to actions brought under section 1983. *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 103-04 (1980) (issue preclusion) & *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84-85 (1984) (claim preclusion)). Therefore, this Court must analyze New York law in order to determine if there is preclusion based on a judgment rendered in the Article 78 proceeding. *Id.*

> Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue "has necessarily been decided in the prior action and is decisive of the present action," and (2) there has been "a full and fair opportunity to contest the decision now said to be controlling." *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); *see also Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995).

*Id.*; *see also LaFleur v. Whiteman*, 300 F.3d 256, 271-72 (2d Cir. 2002).

Furthermore, "'collateral estoppel may bar relitigation of an issue even against different defendants,' provided that the issue in contention was necessary to the result reached in the prior proceeding."

*LaFleur v. Whiteman*, 300 F.3d at 274 (quoting *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 555 n.1 (2d Cir. 1967)).  Thus, if the parties are in privity, collateral estoppel may still be applicable.  *B.N.E., Swedbank, S.A. v. Banker*, 791 F. Supp. 1002, 1006 (S.D.N.Y. 1992) (citing *Blonder-Tongue Lab., Inc. v. University of Illinois Found.*, 402 U.S. 313, 329 (1971)); *see also* 18 James Wm. Moore et al., Moore's Federal Practice ¶ 132.04(1)(b)(i) (3d ed. 2005).  "The term privity signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive on the others, although those others were not party to the lawsuit."  18 James Wm. Moore et al., Moore's Federal Practice ¶ 132.04(1)(b)(ii); *see also Staten Island Rapid Transit Operating Auth. v. I.C.C.,* 718 F.2d 533, 543 (2d Cir. 1983) (noting that privity, in general, means "concurrent relationship to the same right of property; successive relationship to the same right of property; or representation of the interests of the same person.") (citation omitted)).

The burden of proving whether the issues are the same "rests squarely on the party moving for preclusion."  *LaFleur v. Whiteman*, 300 F.3d at 272.  However, the opposing party will have the burden "to show that it did not have a full and fair opportunity to litigate the issue in the prior proceeding."  *Id.* at 274 n.7 (citing *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 491 (N.Y. Ct. of App. 1984)).

Even assuming that an Article 78 judgment satisfies "New York State law requirements for issue preclusion, as a matter of federal law a state cannot give preclusive effect in its own courts to a constitutionally infirm judgment."  *Giakoumelos v. Coughlin*, 88 F.3d at 61 (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482 (1982)).  However, the "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due

Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Id.* (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. at 481).

Here, Plaintiff presented the issue of insufficient evidence in the Article 78 proceeding. *See Borcsok v. Selsky*, 744 N.Y.S.2d at 772-73. The state court found substantial evidence existed based upon Early's testimony and Plaintiff's admissions. *Id.* The court further noted that the fact that Plaintiff claimed he did not make the admissions created a credibility issue for Plescia to decide. *Id.* at 773. Thus, the issue of sufficiency of the evidence was decided in the Article 78 Proceeding and is decisive in the current action.[8]

In order to forestall the application of collateral estoppel, Borcsok must establish the absence of a full and fair opportunity to litigate the claims in the prior Article 78 proceeding. Here, Plaintiff has not proclaimed that he was denied a full and fair opportunity to litigate his claims. Pl.'s Mem. of Law at pp. 6-7. His only claim is that new evidence was uncovered that would defeat collateral estoppel, and this new evidence is that there are no records to prove an investigation was conducted before the Report was written. Pl.'s Mem. of Law at pp. 7 & 13-14. Plaintiff had a full and fair opportunity to litigate his issues regarding the Hearing. *See supra* note 8. In addition, Donald Selsky, a Defendant in this action, was also the "Respondent" in the prior proceeding. *See Borcsok v. Selsky*, 744 N.Y.S.2d 722. The other Defendants in this action could be seen as having the type of relationship with Selsky that privity would exist amongst them, and therefore, a judgment involving one may justly be conclusive on the others.

Moreover, Plaintiff's citation to *Giakoumelos v. Coughlin*, 88 F.3d at 61-62, for the

---

[8] The Court further notes that the other issues regarding physical evidence raised in this proceeding were duly raised to the New York State Appellate Division, Third Department. *Compare* Compl. at § IV *with* Goglia Decl., Exs. 2(A), Pl.'s Br. & (B), Pl.'s Reply Br.

proposition that new evidence will defeat collateral estoppel is incorrect.  The Second Circuit merely stated that the court should not give preclusive effect if there is a constitutionally infirm judgment.  *Id.*  There is no proof that such is the case here.  The parties were fully able to brief all the issues to the Appellate Division and this Court finds that "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause" were satisfied.  Thus, this Court gives preclusive effect to the Appellate Division's decision regarding "substantial evidence."[9]

As for Plaintiff's claim that Plescia was biased and exhibited prejudice, Plaintiff's assertion is wholly conclusory.  Plaintiff offers no support for his allegations except that the decision of the Hearing did not go in his favor.  *See* Compl. at § IV; Pl.'s Mem. of Law.  Furthermore, a review of the Hearing record shows that Plescia erred on the side of caution and adjourned the Hearing on several occasions so that witnesses could be present and Plaintiff could ask his questions.  *See generally* Goglia Decl., Ex. 3(D), Hr'g Tr.

Therefore, it is recommended that the Motion for Summary Judgment be **granted**.[10]

## C.  Personal Involvement

Defendants Miller and Goord assert they were not personally involved in any alleged constitutional violation.  Defs.' Mem. of Law at pp. 14-16.  Plaintiff states these Defendants are liable in a supervisory capacity.  Pl.'s Mem. of Law at p. 15.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*,

---

[9] Additionally, as to Plaintiff's claim that the Hearing was based on hearsay, the Court notes that hearsay is permissible in disciplinary hearings.  *See Espinal v. Goord*, 2002 WL 1585549, at *1 (S.D.N.Y. July 17, 2002).

[10] As for Defendants' assertion that Plaintiff failed to exhaust his remedies in regard to the sufficiency of the Misbehavior Report, the Court need not address the issue since Plaintiff has failed to state a due process claim.

21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior*

cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement.

Therefore, a prison official may not be found liable for a constitutional violation merely because of

the acts of those under his control."  *Kinch v. Artuz*, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15,

1997) (emphasis in original) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v.*

*Smith*, 21 F.3d at 501) (further citations omitted).  However, liability on the part of the supervisor

may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional
> violation, 2) failure to remedy a wrong after being informed through a report or appeal,
> 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional
> violation, or allowing such a policy or custom to continue, 4) grossly negligent
> supervision of subordinates who committed a violation, or 5) failure to act on
> information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873)
(further citations omitted).

Here, Plaintiff merely claims that Miller is liable because he "is responsible for all that

happens within his prison," Goord is liable because he "oversees all that goes on within his system,"

and Selsky could have corrected the matter when it was before him on appeal.  However, as to

Goord and Miller, such statements do not demonstrate personal involvement.  More importantly,

Plaintiff cannot establish any claims for supervisory liability as Plaintiff has failed to show that any

"subordinate" Defendant committed a constitutional violation.

Thus, it is recommended that Summary Judgment be **granted** as to Defendants Miller,

Goord, and Selsky on this ground.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 23) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 21, 2007
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge